UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JELVER EFRAIN MEDINA TRUJILLO,<br><br>                                   Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LaROSE, Senior Warden Otay Mesa Detention Center; PAMELA BONDI, United States Attorney General; KRISTI NOEM, Secretary of the Department of Homeland Security; PATRICK DIVVER, ICE San Diego Field Office Director, in their official capacities,<br><br>                                   Respondents. | Case No.:  26cv0877-GPC(MSB)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

On February 11, 2026, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 seeking to be released from detention.  (Dkt. No. 1, Pet.)  Respondents filed a return on February 17, 2026.  (Dkt. No. 3.)  Petitioner filed a traverse on February 19, 2026.  (Dkt. No. 4.)  Based on the reasoning below, the Court GRANTS the petition for writ of habeas corpus.

/ / /

/ / /

# BACKGROUND

Petitioner Jelver Efrain Medina Trujillo ("Petitioner") is a 53-year old citizen of Guatemala who arrived to the United States without inspection in Arizona in February 1995. (Dkt. No. 1, Pet. ¶¶ 1, 26.) He fled Guatemala after his family was brutalized and threatened with death by anti-government guerillas during the civil war. (*Id.* ¶ 27.) His mother and later his father were killed due to the political violence. (*Id.*) He filed for asylum when he arrived and was issued a work permit. (*Id.*) He has a girlfriend who is a U.S. citizen and two children who are U.S. citizens. (*Id.* ¶ 26.) He works as a painter and has no criminal record. (*Id.*)

Around 2007, Petitioner was served with a Notice to Appear in immigration court commencing removal proceedings against him. (*Id.* ¶ 28.) DHS did not place him in detention conceding he was not a flight risk or danger to the community and remained free on his own recognizance pending removal proceedings. (*Id.* ¶¶ 1, 28.) In the immigration court, he conceded removability, filed relief applications and attended all hearings. (*Id.* ¶ 28.) In October 2010, the immigration judge granted him asylum but DHS appealed the decision and the Board of Immigration Appeal remanded the case back to immigration court. (*Id.*) In April 2013, the immigration judge administratively closed the removal case. (*Id.*)

Since then, Petitioner continued to work, renewed his work authorization and supported his family. (*Id.* ¶ 29.) Petitioner was recently contacted by DHS and ordered to appear at the ERO office in San Diego for a check in on February 2, 2026. (*Id.*) When he reported as ordered, he was detained without explanation and sent to the Otay Mesa Detention Facility where he remains today. The removal case has not been re-calendared at the immigration court. (*Id.*)

Petitioner asserts his detention violates the Immigration and Nationality Act ("INA"), his right to due process and the Administrative Procedure Act ("APA"). He seeks immediate release from custody and an order prohibiting Respondents from re-detaining him without a material change in circumstances and a pre-deprivation hearing where

Respondents must prove by clear and convincing evidence that Petitioner is either a flight risk or danger to the community. (Dkt. No. 1, Pet. at p. 10.)

## LEGAL STANDARD

### A. Section 2241 Habeas Corpus

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

### B. Analysis

In response to the order to show cause, Respondents acknowledge that pursuant to *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d --, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025), *amended and superseded by reconsideration by* –F. Supp. 3d--, 2025 WL 3713987 (Dec. 18, 2025), Petitioner is detained under 8 U.S.C. § 1226(a) and concedes he is entitled to a court ordered bond hearing. (Dkt. No. 3.) In the traverse, Petitioner argues that he is entitled to release rather than a bond hearing because the DHS already found that he was not a danger to the community and not a flight risk and released him on his own recognizance in 2007. (Dkt. No. 4 at 3.[1]) Therefore, Petitioner

---

[1] Page numbers are based on the CM/ECF pagination.

asserts that the government's re-detention of Petitioner without any change in circumstance violates due process. (*Id.*)

Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Id.* at 693.

As applied to cases like Petitioner, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *Padilla v. United States Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). In fact, the government's initial release of an individual from custody "creates an 'implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). An initial release from ICE custody further reflects "a determination by the government that [an individual is] neither a flight risk nor a danger to the community." *Pinchi*, 792 F. Supp. 3d at 1034; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, *7 (N.D. Cal. Sept. 12, 2025). Thus, DHS may generally not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros,* 2025 WL 2637503, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) and *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).

Here, because Petitioner was released on his own recognizance, he maintains a protected liberty interest in remaining out of custody.

The Court must next determine "what process is due." *Morrissey*, 408 U.S. at 481. "The constitution typically 'requires some kind of a hearing *before* the State deprives a person or liberty or property.'" *G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014274 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted sub nom. G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wash. Oct. 28, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original)). To determine what procedures are required by due process, the Court evaluates the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976). *See Ortiz Donnis*, 2025 WL 2879514, at *12. Under *Mathews*, a court must consider (1) "the private interest" at stake, (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards," and (3) the "Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." 424 U.S. at 335.

As to the first *Mathews* factor, Petitioner has a significant private interest in his continued liberty. Thus, this factor favors Petitioner. *See Pinchi*, 792 F. Supp. 3d at 1034-35; *Salcedo* 2025 WL 2637503, at *12; *Ortiz Donis*, 2025 WL 2879514, at *12.

Turning to the second *Mathews* factor, "it is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing." *Pinchi*, 792 F. Supp. 3d at 1035. Where, as here, petitioner has not received a pre-detention hearing, "'the risk for erroneous deprivation [of liberty] is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Id.* (quoting *Singh v. Andrews*, --F. Supp. 3d--, 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Further, courts have noted that "civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *G.S. v. Bostock*, 2025 WL 3014274, at *8. By releasing Petitioner in 2007, DHS determined that he was neither a flight risk nor a danger to his community. *See id.*; *Ortiz Donis*, 2025 WL 2879514, at *1; *Pinchi*, 792 F. Supp. 3d

at 1034. Petitioner asserts that he has no criminal history and has established strong familial ties as his girlfriend and two children are U.S. citizens. (Dkt. No. 1, Pet. ¶¶ 26, 29.) Thus, the risk of erroneous deprivation is particularly high in Petitioner's case, as there is no evidence of changed circumstances or that Petitioner is a danger or flight risk. Accordingly, this factor also favors Petitioner.

Finally, by failing to respond, the Government "has failed to show any countervailing interest against providing a pre-detention hearing." *G.S. v. Bostock*, 2025 WL 3014274, at *9; *Salcedo Aceros*, 2025 WL 2637503, at *12. Indeed, "in immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (internal quotation marks and citation omitted). On the other hand, the costs of immigration detention are staggering. *Hernandez v. Session*, 872 F.3d 976, 996 (9th Cir. 2017). In sum, the Government's interest in detaining Petitioner without a hearing is low. *See Singh*, 2025 WL 1918679, at *8.

Each of the *Mathews* factors favors Petitioner. Thus, Petitioner was entitled to a pre-deprivation bond hearing. DHS detained Petitioner, without explanation and without notice, despite its prior determination that Petitioner was not a flight risk and posed no danger to the community. "Under these circumstances, given the government's conduct, the substantial liberty interests held by [Petitioner], and the fact that the government has no evidence and does not contend that [Petitioner] presents [a] risk or flight or to public safety, a pre-deprivation bond hearing is warranted." *Salcedo* 2025 WL 2637503, *12. At such a hearing, the government must demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight. *Pinchi*, 792 F. Supp. 3d at 1038; *see also Ortiz Donis*, 2025 WL 2879514, at *15. Put simply: "since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Ortiz Donis*, 2025 WL 2879514, at *15. Because Petitioner was not afforded a pre-deprivation bond hearing, the Court concludes that Petitioner is entitled be released under the due process clause.

## CONCLUSION

Based on the reasoning above, the Court **GRANTS** the petition for writ of habeas corpus.  Because Petitioner's due process rights have been violated, Petitioner **SHALL** be released **IMMEDIATELY** from DHS custody under the same conditions as his previous order of release.  Respondents **SHALL NOT** re-arrest or re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner is likely to flee or pose a danger to the community if not detained.  The Clerk of Court SHALL enter judgment in Petitioner's favor and close this case.

IT IS SO ORDERED.

Dated: February 18, 2026

Hon. Gonzalo P. Curiel
United States District Judge